**2017 UT App 215**

## THE UTAH COURT OF APPEALS

JONATHAN ERIC ZARAGOZA,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20160212-CA
Filed November 24, 2017

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 130906346

Jonathan Eric Zaragoza, Appellant Pro Se

Sean D. Reyes and Erin Riley, Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
JILL M. POHLMAN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      In 2010, a jury convicted Jonathan Eric Zaragoza of one count of aggravated assault, one count of domestic violence in the presence of a child, and one count of aggravated kidnapping. This court affirmed Zaragoza's convictions on direct appeal. Thereafter, Zaragoza filed a petition for post-conviction relief, setting forth several reasons why he believed he had not received a fair trial. The district court resolved the post-conviction case by granting the State's motion for summary judgment, and Zaragoza now appeals. We affirm.

BACKGROUND

¶2 Zaragoza, his wife (Wife), Wife's daughter (Daughter), and one of Zaragoza's friends (Friend) were staying at a motel in Salt Lake City, and had been there for several days.[1] One night, Zaragoza left the motel in Wife's car. Friend started "calling around" and discovered that Zaragoza was at a different hotel with another person. Wife and Friend went over to the other hotel, retrieved Wife's car, and returned to the motel. Wife "took her car . . . so [Zaragoza] couldn't take the car and leave her without one." Once Wife and Friend returned, Wife "packed up [Zaragoza's] belongings and was going to tell him that she was done[,] . . . and she was going to throw him out." After Wife packed up Zaragoza's belongings, she returned to the other hotel, gave Zaragoza his belongings, and told him, "I want a divorce and I'm leaving." Afterwards, Wife drove away and "hid the car" because she did not want Zaragoza "to come back and take the car." Wife and Friend made their way back to the motel, and Wife, Friend, and Daughter fell asleep.

¶3 A while later, Zaragoza came back to the motel and "was upset" and "yelling at them." Wife took Daughter to the front desk, and asked the front desk clerk to call the police. When the

_____

1. As discussed in greater detail below, prior to trial Wife invoked the spousal testimonial privilege and informed the court that she would not testify for the State. However, Wife gave two statements to police about the incident, the first just after the incident, and the second at a later date while she was staying at a women's shelter. The trial court allowed the State to introduce both of these statements into evidence. At trial, the State's case consisted primarily of Wife's two statements, as explained through the police officers who interviewed her. Many of the quotations included here come from Wife's two statements.

Police arrived, Wife and Daughter went back to the room. At that point, Wife "was under the impression that [Zaragoza had] been taken into custody [be]cause he didn't come back to the room."

¶4 The following morning, Zaragoza "came back to the [m]otel room[,] and he was furious with [Wife]." Upon entering the room, Zaragoza "punched [Wife] in the nose . . . causing her nose to bleed, after which he punched her in the nose again and then in the side of the head." He also "punched her in the stomach which doubled her over and sent her to the ground . . . at which point he picked up a baseball bat." Bat in hand, Zaragoza struck Wife "in the leg . . . several times." In addition to hitting Wife in the leg, Zaragoza "would hold the bat in the middle of [Wife's] head and then yell at her and then hit her on the top of the head" with the bat. This ordeal lasted, according to Wife, for "two to three hours." Friend and Daughter were in the room the entire time.

¶5 After a while, Zaragoza "told [Wife] to take off her clothes and get in the shower and clean up." After Wife had taken her clothes off, Zaragoza "punched her in the stomach . . . and in her private spot." Wife showered and told Zaragoza where she had parked the car. Zaragoza finally left the room, at which point Wife and Daughter went to the motel office for help. An ambulance arrived and Wife was later treated at a hospital for her injuries.

¶6 After investigation, the State charged Zaragoza with one count of aggravated assault causing serious bodily injury, one count of domestic violence in the presence of a child, and one count of aggravated kidnapping.

¶7 Before trial, the court entered a no-contact order prohibiting Zaragoza from communicating with Wife. Despite the order, and after its issuance, Zaragoza made 276 phone calls to Wife from the jail. Also before trial, Wife invoked the spousal

testimonial privilege and informed the court that she would not testify against Zaragoza. In response, the State asked the trial court,[2] pursuant to the forfeiture-by-wrongdoing doctrine, to admit two statements Wife had previously made to police. After holding a hearing, the trial court determined that Zaragoza, through his 276 phone calls and other means, had "engaged in witness tampering to attempt to induce" Wife to withhold testimony. Accordingly, the trial court concluded that Zaragoza had intentionally made Wife unavailable to testify through his own wrongful actions, and therefore the forfeiture-by-wrongdoing doctrine applied. Thus, the court allowed the State to introduce Wife's two out-of-court statements describing the incident.

¶8      At the close of the State's case-in-chief, defense counsel moved to dismiss the aggravated kidnapping charge, arguing that the charge merged with the aggravated assault charge. The trial court took the matter under advisement and later denied the motion, explaining that "the crime of aggravated assault is in a different category" than the crime of aggravated kidnapping "because there is no detention that is necessarily incidental to the crime of aggravated assault."

¶9      During the defense's case, counsel asked Wife to testify in Zaragoza's defense. She agreed to do so, and testified generally that Zaragoza did not lock her in the motel room or otherwise physically restrain her from leaving the motel room. She added that she did not sustain any injuries that caused a protracted loss of bodily function.

---

2. We use the term "trial court" to refer to the court that presided over Zaragoza's original criminal trial, and we use the term "district court" to describe the court that presided over the post-conviction case.

¶10    After hearing the evidence, the jury convicted Zaragoza of aggravated kidnapping, aggravated assault involving bodily injury (a lesser included offense of aggravated assault causing serious bodily injury), and domestic violence in the presence of a child. Zaragoza appealed his convictions, and this court affirmed. *See State v. Zaragoza*, 2012 UT App 268, ¶ 10, 287 P.3d 510. In that direct appeal, Zaragoza argued, first, that the trial court should have "instruct[ed] the jury on the lesser-included relationship between aggravated assault and aggravated kidnapping." *Id.* ¶ 4. And second, he argued that the trial court should not have admitted Wife's out-of-court statements. *Id.* ¶ 7. We rejected those arguments, explaining that Zaragoza did not preserve his first argument, *id.* ¶ 6, and that the forfeiture-by-wrongdoing doctrine applied to Wife's out-of-court statements, *id.* ¶ 9.[3]

¶11    After this court affirmed Zaragoza's convictions, he petitioned for post-conviction relief. In his petition, Zaragoza argued, first, that the prosecutor had been improperly permitted to "testify about phone calls, letter[s] referred to in phone calls, and prior bad acts and pending charges not yet adjudicated." He also alleged he was denied effective assistance of counsel when trial counsel: (1) called Wife to testify against his wishes, (2) failed to independently investigate and pursue an alibi defense, (3) failed to properly argue for a lesser included offense instruction on the aggravated kidnapping charge, and (4) failed to object to the "prosecutor's testimony" regarding the jail phone calls between Zaragoza and Wife while the case was pending. In addition to his claims that his trial counsel was ineffective,

---

3. We also noted that "even if there had been any error in admitting Wife's out-of-court statements[,] it was cured when Wife subsequently testified" and was subject to cross-examination. *State v. Zaragoza*, 2012 UT App 268, ¶ 9, 287 P.3d 510.

Zaragoza also asserted in his petition that his appellate attorneys on direct appeal were ineffective for: (a) failing to "raise and thoroughly investigate" whether trial counsel had been constitutionally ineffective, (b) failing to file a writ of certiorari in the Utah Supreme Court, and (c) failing to argue that Zaragoza's right to a speedy trial had been violated.

¶12 After filing his post-conviction petition, Zaragoza requested that the district court appoint an attorney to represent him in the post-conviction case. The district court denied the request, explaining that "[t]here does not appear to be anything unusually complex or difficult about the issues in this case, and the appointment of counsel is not warranted." Zaragoza then moved for reconsideration. The district court denied Zaragoza's request, again explaining that "the issues presented in the Petition are not complex and the petitioner appears to be fully capable of presenting his claims in a clear and articulate manner."

¶13 The State moved for summary judgment on all of Zaragoza's claims for post-conviction relief. The district court granted the motion, and Zaragoza now appeals.

ISSUES AND STANDARDS OF REVIEW

¶14 First, Zaragoza contends that the district court should have appointed an attorney to assist him with his post-conviction claims. We review the district court's denial of a motion to appoint counsel under the Post-Conviction Remedies Act (the PCRA) for an abuse of discretion. *Ross v. State*, 2012 UT 93, ¶ 57, 293 P.3d 345. "An appellate court will find an abuse of discretion only if it can be said that no reasonable person could adopt the view of the [district] court." *State v. Atkinson*, 2017 UT App 83, ¶ 8, 397 P.3d 874 (citation and internal quotation marks omitted) (discussing abuse of discretion in the context of a sentencing decision).

¶15    Next, Zaragoza argues that the district court should not have granted the State's motion for summary judgment on his substantive claims for relief under the PCRA. A district court correctly grants summary judgment "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness . . . ." *Ross*, 2012 UT 93, ¶ 18 (citation and internal quotation marks omitted). Likewise, we review a district court's summary judgment ruling for correctness. *Id.*

ANALYSIS

I. Zaragoza's Request for Appointment of Post-Conviction Counsel

¶16    Zaragoza first argues that the district court erred by denying his motion to appoint counsel. We disagree.

¶17    Under the express terms of the governing statute, a district court enjoys wide latitude regarding whether to appoint counsel in a post-conviction case. The PCRA itself states that "the court *may*, upon the request of an indigent petitioner, appoint counsel on a pro bono basis to represent the petitioner in the post-conviction court or on post-conviction appeal." Utah Code Ann. § 78B-9-109(1) (LexisNexis 2012) (emphasis added); *see also* Utah R. Civ. P. 65C(j) (same). The next subsection of the PCRA instructs district courts that, "[i]n determining whether to appoint counsel, the court *shall* consider" two separate factors: "(a) whether the petition or the appeal contains factual allegations that will require an evidentiary hearing; and (b) whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." Utah Code Ann. § 78B-9-109(2) (emphasis added). Accordingly, a district court enjoys wide discretion over the

ultimate decision about whether to appoint pro bono counsel in post-conviction cases, as long as the district court, in arriving at its decision, considers the factors that the statute requires it to consider.[4] Indeed, in this context, our supreme court has instructed that a district court abuses its discretion "only if its decision was beyond the limits of reasonability," an event which occurs when the district court has taken actions that are "inherently unfair" or that "no reasonable person would take." *Ross*, 2012 UT 93, ¶ 57 (citation and internal quotation marks omitted).

¶18    Here, the district court properly considered both statutory factors. In announcing its decision, the district court concluded that the petition "implicate[d] issues of law that [could] be determined from the record," and that therefore no evidentiary hearing was required. In addition, the district court stated that "[t]here does not appear to be anything unusually complex or difficult about the issues in this case." Based on its consideration of these two statutorily-mandated factors, the district court concluded that "the appointment of counsel is not warranted."

¶19    This analysis was entirely appropriate. The district court considered the factors it was required to consider by statute. And we perceive nothing about the district court's decision that suggests it was "beyond the limits of reasonability" or "inherently unfair." *See Id.* Under the governing statute, the ultimate decision about whether to appoint counsel rests with the district court, and we will not ordinarily disturb that

---

4. This conclusion is not only required by the statute's plain language, it is also consistent with the well-settled principle that "there is no constitutionally or statutorily guaranteed right to counsel when defendants elect to pursue collateral attacks on their convictions." *State v. Litherland*, 2000 UT 76, ¶ 13 n.4, 12 P.3d 92 (citations omitted).

decision. In sum, we cannot conclude on this record that the district court abused its discretion in denying Zaragoza's request to appoint pro bono counsel.

## II. The State's Motion for Summary Judgment

¶20 Next, Zaragoza argues that the district court should not have granted the State's summary judgment motion. Specifically, he asserts that the district court should not have disposed of all of his post-conviction arguments as a matter of law on summary judgment. We conclude that the district court properly granted the State's motion for summary judgment, and appropriately dismissed all of Zaragoza's arguments as a matter of law.

¶21 Zaragoza's arguments can be summarized as follows. First, he argues that the trial court should not have let the prosecutor "testify" at trial. Second, he argues that his appellate attorneys were ineffective for failing to argue on direct appeal that his trial counsel was ineffective for several reasons, including calling Wife to testify, not investigating a possible alibi defense, and not requesting jury instructions for lesser included offenses. Third, he asserts that his appellate attorneys were ineffective in their own right for failing to file a writ of certiorari in the Utah Supreme Court, and for failing to argue that Zaragoza's speedy trial rights had been violated. We address each of these arguments in turn.

### A. The Prosecutor's "Testimony"

¶22 Zaragoza first argues that the prosecutor was improperly "allowed to testify about the 27[6] phone calls, letters that were sent while [Zaragoza] was in jail, prior bad acts[,] and about charges pending but not adjudicated." This argument fails for two independent reasons.

¶23     First, a litigant is barred from raising any matter in a post-conviction relief petition that "was raised or addressed at trial or on appeal" or that "could have been but was not raised at trial or on appeal." Utah Code Ann. § 78B-9-106(1)(b)–(c) (LexisNexis 2012). Zaragoza's argument is not couched in terms of ineffective assistance of counsel, and it is an argument that could have easily been raised at trial or on direct appeal. Zaragoza failed to do so. Accordingly, Zaragoza is statutorily barred from raising it now.

¶24     Second, even if we could consider the merits of this claim, it would fail for the simple reason that the prosecutor did not actually testify. Certainly, the attorney for the State gave an opening statement and made a closing argument. The prosecutor, in cross-examining witnesses, sometimes asked leading questions, a practice that is allowed under applicable rules. *See* Utah R. Evid. 611(c)(1) (stating that "[o]rdinarily, the court should allow leading questions . . . on cross examination"). But none of this activity constitutes "testifying."

¶25     Accordingly, the district court properly granted summary judgment on this claim.[5]

---

5. In addition, Zaragoza lodges two additional arguments that merit only brief mention. Specifically, he contends that the aggravated kidnapping charge should have merged into the aggravated assault charge, and that the post-conviction judge should not have handled the case. He raised the first argument (merger) with the original trial court, but did not raise that argument on direct appeal. And he has never before raised the second argument (disqualification of the post-conviction judge) at any point prior to this appeal. Neither of these arguments is couched in terms of the ineffectiveness of either his trial counsel or his appellate attorneys. We therefore decline to address these arguments. *See* Utah Code Ann. § 78B-9-106(1)(c) (LexisNexis

(continued…)

B.      Zaragoza's Claims for Ineffective Assistance of Counsel

¶26     The remainder of Zaragoza's claims assert, to one degree or another, that Zaragoza's appellate attorneys[6] rendered ineffective assistance to him. We conclude that his appellate attorneys were not constitutionally ineffective, and that the district court therefore properly entered summary judgment in favor of the State on these claims.

¶27     "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional right includes not just the right to assistance of counsel, but also the right to *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686

---

(…continued)
2012) (stating that a litigant cannot raise an issue in a post-conviction relief case that "could have been but was not raised at trial or on appeal"); *see also Winward v. State*, 2012 UT 85, ¶ 11, 293 P.3d 259 (declining to address argument in post-conviction case raised for the first time on appeal).

6. Zaragoza also attempts to argue that his trial counsel was ineffective, for the same reasons that he claims his appellate attorneys were ineffective. However, Zaragoza is precluded from raising those arguments here, because he could have raised those claims during his direct appeal. *See* Utah Code Ann. § 78B-9-106(1)(b)–(c) (stating that a defendant is not eligible for post-conviction relief upon any ground that was or could have been raised at trial or on appeal). In assessing Zaragoza's claims for ineffective assistance of his appellate attorneys, however, we will be required to at least partially examine the performance of Zaragoza's trial counsel, at least insofar as Zaragoza claims that his appellate attorneys were ineffective for not raising claims that his trial counsel was ineffective.

(1984). In order to demonstrate that his attorneys were constitutionally ineffective, Zaragoza must establish, first, that "counsel's performance was deficient." *Landry v. State*, 2016 UT App 164, ¶ 23, 380 P.3d 25 (citation and internal quotation marks omitted). Second, he must show that "the deficient performance prejudiced the defense." *Id.* (citation and internal quotation marks omitted). The same standards apply to claims for ineffective assistance of appellate counsel as apply to claims for ineffective assistance of trial counsel. *See Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530.

¶28 In evaluating an attorney's performance, "we recognize the variety of circumstances faced by defense counsel and the range of legitimate decisions regarding how best to represent a criminal defendant." *Archuleta v. Galetka*, 2011 UT 73, ¶ 39, 267 P.3d 232 (brackets, citation, and internal quotation marks omitted). Thus, a petitioner "must overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment." *Id.* (citation and internal quotation marks omitted).

¶29 To prevail on a claim of ineffective assistance of appellate counsel, a defendant "must show that the issue was obvious from the trial record and . . . probably would have resulted in reversal on appeal." *Lafferty*, 2007 UT 73, ¶ 39 (ellipsis in original) (brackets, citation, and internal quotation marks omitted). "'[T]he Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal . . . . [C]ounsel frequently will "winnow out" weaker claims in order to focus effectively on those more likely to prevail.'" *Ross*, 2012 UT 93, ¶ 45 (second alteration in original) (citation omitted).

1.     Wife's Testimony at Trial

¶30 First, Zaragoza argues that he received ineffective assistance on appeal when his appellate attorneys failed to argue that his trial counsel was ineffective for calling Wife "to testify as

a defense witness contrary to [Zaragoza's] wishes." He takes particular issue with his trial attorney's decision, because he claims that the State could "easily manipulate [Wife's] testimony sufficient to establish" the State's case. We disagree.

¶31   Zaragoza's argument fails to account for the fact that, even before Wife testified in person, the State had already successfully introduced Wife's out-of-court statements, pursuant to the forfeiture-by-wrongdoing doctrine, through the two police officers who had interviewed her. The State introduced those statements in a way that precluded any cross-examination of Wife. The only way defense counsel could cross-examine Wife on her statements was to call Wife to the stand. We agree with the district court's observation that calling Wife to testify allowed the defense to "challenge the reliability of Wife's statements, the severity of the harm to [her], and assert that [she] was not physically restrained." There were therefore plausible tactical reasons for counsel to call Wife to testify, and in the context of ineffective assistance claims we do not second-guess tactical decisions by counsel. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (stating that "[t]he court give[s] trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them" (citation and internal quotation marks omitted)); *see also State v. Larrabee*, 2013 UT 70, ¶ 19, 321 P.3d 1136 (explaining that a petitioner must overcome a presumption of reasonableness and if counsel makes a strategic choice after a thorough investigation, "then that choice is 'virtually unchallengeable'" (quoting *Strickland*, 466 U.S. at 690–91)).

¶32   Therefore, Zaragoza's appellate attorneys were not ineffective for failing to argue that his trial counsel was ineffective for electing to call Wife as a witness. The district court properly granted summary judgment on this ground.

## 2.    "Alibi" Defense

¶33    Zaragoza next argues that his appellate attorneys were ineffective for failing to argue, on direct appeal, that his trial counsel was ineffective for failing to "independently investigate alibi information, interview [and call] alibi witnesses[,]" and for failing to "introduce exculpatory alibi evidence in defense of the [aggravated] kidnapping charge." In his petition, he specifically argued that trial counsel should have obtained surveillance camera footage that would have established that he "could not have been present" at the motel "for [the] complete [two] hour duration during [the] assault."[7] In our view, trial counsel's alleged failure to investigate alibi information was not constitutionally ineffective representation, because the State was not required to prove, for any of the crimes with which Zaragoza was charged, that Zaragoza was present at the motel for any specific length of time, and certainly not for the entire time that Wife claimed he was there.

¶34    As noted above, Zaragoza was charged with three crimes: aggravated assault causing serious bodily injury, domestic violence in the presence of a child, and aggravated kidnapping. None of these crimes require the State to prove that the defendant was present for any specific length of time. There is no temporal requirement for aggravated assault; indeed, an assault can happen very quickly. *See* Utah Code Ann. § 76-5-102, 103 (LexisNexis Supp. 2017). Likewise, there is no temporal requirement for the commission of domestic violence in the presence of a child, a crime which can also happen very quickly. *See id.* § 76-5-109.1(2) (LexisNexis 2012). With regard to aggravated kidnapping, "[a]n actor commits aggravated kidnapping if the actor, in the course of committing unlawful

---

7. Wife testified that Zaragoza came to the motel around 9:00 a.m. or 10:00 a.m. and left just before noon.

detention or kidnapping," uses a "dangerous weapon" or "acts with intent" to commit one of several enumerated actions. *See id.* § 76-5-302(1) (LexisNexis Supp. 2017). There is no specific temporal requirement for unlawful detention. *See id.* § 76-5-304(1) (LexisNexis 2012). As for kidnapping, there are several alternative definitions of the crime, only one of which has any temporal requirement; that alternative definition requires the defendant to have "detain[ed] or restrain[ed] the victim for any substantial period of time." *See id.* § 76-5-301(1)(a) (LexisNexis 2012); *see also State v. Wilder*, 2016 UT App 210, ¶ 20, 387 P.3d 512 (explaining that "the kidnapping alternative under the aggravated kidnapping statute may require detain[ing] or restrain[ing] the victim for [a] substantial period of time, [but] the unlawful detention alternative does not" (citation and internal quotation marks omitted)). Given the elements of the crimes for which he was charged, the State was not required to prove that Zaragoza was at the motel for any specific length of time, and certainly not for two hours.

¶35 Importantly, Zaragoza does not claim that he was never at the motel on the morning in question, and therefore does not argue that the surveillance video footage would show that he was never at the motel on the morning in question. Indeed, at trial, Zaragoza did not deny committing an assault upon Wife at the motel that morning. Instead, he claims only that he was not at the motel for the entire two- or three-hour time span that Wife claimed he was there, and that the surveillance video would support that contention. But even if we assume that to be true, the surveillance video would not have significantly aided Zaragoza's trial defense. All of the crimes with which Zaragoza was charged could have been committed fairly quickly, and none required Zaragoza to be present for any specific length of time. Therefore, even if trial counsel had obtained surveillance video showing Zaragoza was not present at the motel for the entire time Wife claimed he was there, a jury could still have

convicted him of aggravated assault, domestic violence in the presence of a child, and aggravated kidnapping.

¶36 Certainly, evidence tending to show that Wife's recollection of events was not completely accurate may have had some value to Zaragoza's case, in that it may have allowed Zaragoza to more effectively challenge Wife's credibility. But the surveillance video evidence would not have had appreciable value beyond that. Trial attorneys must often make difficult decisions about which matters to spend time, energy, and resources on, and which matters to let go. Given the unlikelihood that investigating the motel video footage would have materially assisted Zaragoza's case, trial counsel was not constitutionally ineffective for making the decision to spend his resources elsewhere. *See Burke v. State*, 2015 UT App 1, ¶¶ 23, 25, 26, 342 P.3d 299 (concluding that the accused had not received ineffective assistance of counsel merely due to counsel's failure to investigate a potential alibi, because "the possible alibi could only have exonerated [the defendant] for acts committed" during "the last hour of a nearly seven-hour period"), *cert. denied*, 352 P.3d 106 (Utah 2015), *and cert. denied*, 136 S. Ct. 266 (2015). Accordingly, Zaragoza's appellate attorneys were not constitutionally ineffective for failing to argue, on direct appeal, that his trial counsel was ineffective for allegedly not investigating this "alibi" defense. The district court properly granted summary judgment on this ground.[8]

_____

8. Zaragoza also contends that his trial counsel was ineffective for failing to request a bill of particulars on the aggravated kidnapping charge, which he contends would have forced the State to elect between a "kidnapping" or "unlawful detention" theory on the aggravated kidnapping charge. A bill of particulars would not, however, have forced the prosecution to elect to proceed under a "kidnapping" or "unlawful detention" theory. "A defendant is entitled to a bill of particulars 'only

(continued…)

3.    Lesser Included Offenses

¶37    Zaragoza additionally asserts that his appellate attorneys were ineffective for not arguing, on direct appeal, that his trial counsel was ineffective for failing to request jury instructions for kidnapping and unlawful detention as lesser included offenses of aggravated kidnapping. We disagree.

¶38    A defendant is entitled to a lesser included offense instruction when the "charged offense and the lesser included offense have overlapping statutory elements" and "the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him on the [lesser] included offense." *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (citation and internal quotation marks omitted). In determining whether to give a lesser included offense instruction, a trial court does not weigh the evidence, but instead determines if there is a rational basis for a jury to acquit on the greater offense while convicting on the lesser offense. *Id.*

¶39    Here, the first part of the inquiry is met: unlawful detention and kidnapping overlap with the elements of aggravated kidnapping. *See* Utah Code Ann. § 76-5-306. However, in this case, the record suggests no rational basis for a verdict acquitting Zaragoza of aggravated kidnapping and convicting him of one of the lesser offenses. One crucial

---

(…continued)

when the information or indictment is constitutionally deficient by reason of its failure to inform of the nature and cause of the offense charged.'" *State v. Bernards*, 2007 UT App 238, ¶ 15, 166 P.3d 626 (quoting *State v. Allen*, 839 P.2d 291, 298 (Utah 1992)). A bill of particulars would have given Zaragoza notice of the charges—which he already had—but it would not have forced the prosecution to elect a particular theory.

difference between aggravated kidnapping and a lesser offense is the use of a dangerous weapon. *See id.* § 76-5-302(1)(a) (defining aggravated kidnapping as, among other things, the commission of either "unlawful detention or kidnapping" while using "a dangerous weapon"). The evidence at trial showed— overwhelmingly—that Zaragoza used a baseball bat when he assaulted Wife. Indeed, at trial Zaragoza conceded the point: defense counsel stated during closing argument that "there's really no dispute that [Wife] was assaulted with a bat." There was simply no evidence presented at trial demonstrating that Zaragoza committed kidnapping or unlawful detention, but not aggravated kidnapping. Thus, there was no "rational basis" for a jury to convict him of either kidnapping or unlawful detention, but acquit him of aggravated kidnapping. He was therefore not entitled to lesser included offense instructions. *See, e.g., Powell*, 2007 UT 9, ¶ 28 (explaining that the defendant was not entitled to lesser included offense instruction of aggravated assault when "[t]he State's evidence overwhelmingly demonstrated that [the defendant attacked the victim] with the specific intent to kill" and therefore there was no rational basis for acquitting the defendant of the charged crime, attempted murder).

¶40    Because Zaragoza was not entitled to lesser included offense instructions on the aggravated kidnapping charge, his trial counsel was not ineffective for failing to argue for the lesser included instructions. Therefore, Zaragoza's appellate attorneys were not ineffective for failing to argue that his trial counsel was ineffective. The district court therefore properly granted summary judgment on this issue.

4.     Writ of Certiorari in the Utah Supreme Court

¶41    Next, Zaragoza claims he was denied effective assistance of counsel because his appellate attorneys, after this court affirmed Zaragoza's convictions on direct appeal, did not seek review before the Utah Supreme Court. However, the Utah

Supreme Court's review is discretionary. *See* Utah Code Ann. § 78A-3-102(5) (LexisNexis 2012). This claim therefore fails for the simple reason that there is no constitutional right to counsel on discretionary appeals. *See Ross v. Moffit*, 417 U.S. 600, 610 (1974) (explaining that a defendant does not have a constitutional right to counsel for the purpose of mounting a "discretionary appeal to the State Supreme Court"). It follows, then, that there is no right to effective assistance of counsel in asking an appellate court to accept a discretionary appeal. *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (per curiam) (explaining that because a defendant does not have a constitutional right to review on discretionary appeals, a petitioner cannot be deprived of effective assistance of counsel by counsel's failure to seek discretionary review). Therefore, the district court properly granted summary judgment on this claim.

5.      Speedy Trial

¶42     Next, Zaragoza argues that his appellate attorneys should have argued on direct appeal that his speedy trial rights had been violated. We are unpersuaded.

¶43     To determine whether a defendant's speedy trial rights have been violated, we consider the "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). However, a review of all four factors is only necessary when a delay is presumptively prejudicial. *Id.* To trigger a *Barker* analysis necessitating the evaluation of all four factors, Zaragoza "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay . . . since, by definition, [a defendant] cannot complain that the government has denied him a speedy trial if it has, in fact, prosecuted [the] case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citation and internal quotation marks omitted).

¶44 Here, the State charged Zaragoza on June 23, 2009, and trial took place on June 7, 2010. It does not strike us as presumptively dilatory for a first-degree felony case to be tried in approximately one year. In this case, moreover, the fact that the case was not tried sooner is a matter that cannot fairly be laid entirely at the feet of the State. Indeed, Zaragoza requested several continuances. The trial court noted in its minute entry for one of the requests that "Defendant is having difficulty with representation by the whole [Legal Defender's Association] Office" and that Zaragoza was "[b]eing completely difficult with any representation." Thus, Zaragoza appears to have caused at least some of the delay of which he now complains.

¶45 We agree with the district court's conclusion that "[t]he length of delay in this case is not unreasonable and is not presumptively prejudicial." *See, e.g.*, *State v. Willett*, 909 P.2d 218, 225 (Utah 1995) (holding that a delay of 345 days did not violate a defendant's speedy trial rights when "[t]he length of the delay was not disproportionate to the complexity of the case," and the defendant "caused delays by requesting continuances for discovery and to file motions"). Therefore, Zaragoza's appellate attorneys were not ineffective for failing to raise this argument on direct appeal, and the district court properly granted the State's motion for summary judgment on this claim.

CONCLUSION

¶46 The district court did not abuse its discretion in denying Zaragoza's requests for appointment of post-conviction counsel, and the district court correctly granted the State's motion for summary judgment.

¶47 Affirmed.

_____