**2020 UT App 47**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY JAMES PETERSON,
Appellant.

Opinion
No. 20180550-CA
Filed March 26, 2020

Third District Court, West Jordan Department
The Honorable Katie Bernards-Goodman
No. 171403640

Emily Adams, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

MORTENSEN, Judge:

¶1     Timothy James Peterson was convicted of aggravated kidnapping, aggravated assault, and failure to stop at a law enforcement officer's command after he repeatedly struck his wife throughout an hours-long car ride, prevented her from escaping, and fled when an officer intervened. Peterson challenges his conviction for aggravated kidnapping with a claim of insufficient evidence and his conviction for aggravated assault with a claim of ineffective assistance of counsel. We affirm both convictions.

BACKGROUND

¶2    In September 2017, Peterson and his wife (Wife) were separated but remained married. One evening, in hopes of reconciling, Wife accompanied Peterson to a recording studio in Salt Lake City. Both Peterson and Wife drank alcohol at the studio, even though Wife was on probation and was not permitted to imbibe. Between 8:00 p.m. and 9:00 p.m., Peterson became angry with Wife and told her to get in his car, which she willingly did. As Peterson drove away, he struck Wife in the head multiple times. The car slowed as it reached an overpass and Wife exited the car and attempted to walk away. Peterson pulled the car next to her and "convinced" her to get back in the car by threatening her, telling her to "get back in the car before this becomes a scene," and "physically pushing [her] back into the car." Wife testified that she was frantic and that a couple thoughts occurred to her: she wanted to avoid law enforcement because she had been drinking, and she knew that she "couldn't run or [Peterson would] probably still try to get [her] back in the car." Wife testified that Peterson "forced [her] back into the car."

¶3    Peterson resumed driving and hitting Wife. Wife told Peterson to stop hitting her, pleaded with him to stop hitting her, and even offered to have sex with him if he would stop hitting her. At one point, while Peterson drove on the freeway at 75 miles per hour, Wife, in her drunken desperation, attempted to throw herself from the car to escape. Peterson grabbed her by the neck and arm to hold her in the car. Peterson forced Wife to stay in the car for hours and endure the beatings until they arrived at a park in Bluffdale at around 3:00 a.m. Wife was in and out of consciousness during the ordeal. On arriving at the park, Peterson "pulled [Wife] out of the car," forced her over to a water fountain, and told her to "clean [her]self up."

¶4    Later, an officer noticed Peterson's vehicle at the park. The officer saw Peterson just inside the car at the rear passenger-side door, punching something in the back seat. The officer

called to Peterson, who glanced back at the officer and then returned his attention to the back seat of the car. The officer again called out to Peterson, instructing Peterson to turn and face him. As Peterson turned to look at the officer, Wife scrambled out of the rear driver-side door of the car, "stumbling and screaming for [the officer] to save her." Wife ran to the officer's vehicle and attempted to get in, all the while crying, "Help me; save me." Peterson began walking to the front of his car. The officer commanded Peterson, "Don't move; don't go." Peterson then fled on foot from the officer. The officer attempted to pursue Peterson but lost sight of him. The officer returned to the vehicles to tend to Wife and observed she was "disfigured. . . . Her head was misshapen," she was covered in both dried and fresh blood, "she was bleeding from her nose, her eyes, her ears. . . . Her clothing was saturated in blood . . . everything was just covered in blood."

¶5　Wife was taken to the emergency room and treated for her injuries. The emergency-room physician found that twelve of Wife's teeth were shattered, that she sustained fractures to her nasal bone, that she had a splayed lip, and that she suffered a concussion. Wife later reported also having a shattered bone behind one ear, with 85% hearing loss in that ear, as well as two black eyes, a fractured skull, five broken ribs, a lot of bruising, scratch marks, and persistent vision problems.

¶6　Peterson was arrested a few days after the incident and charged with one count each of the following offenses: Aggravated Kidnapping—Domestic Violence related; Aggravated Assault Serious Bodily Injury—Domestic Violence related; Mayhem; and Failure to Stop at the Command of a Law Enforcement Officer. At trial, after the State rested, Peterson moved for a directed verdict on the aggravated kidnapping charge, arguing that Wife was willingly in the car. The court denied the motion. The jury convicted Peterson on the aggravated kidnapping, aggravated assault, and failure to stop charges.

¶7 After trial, Peterson moved to merge the aggravated kidnapping charge into the aggravated assault charge under the then-available common-law merger doctrine. The court denied the motion and sentenced Peterson to concurrent terms of fifteen years to life for the aggravated kidnapping, one to fifteen years for the aggravated assault,[1] and up to one year on the failure to stop conviction. Peterson appeals.

## ISSUES AND STANDARDS OF REVIEW

¶8 Peterson raises two issues on appeal.[2] First, Peterson contends that the trial court erred in denying his motion for a

---

1. The Sentence, Judgment, Commitment identifies the aggravated assault offense as "Aggravated Assault Targeting Law Enforcement W/ Bodily Injury." On appeal, Peterson asks this court to remedy the discrepancy as an illegal sentence under rule 22(e) of the Utah Rules of Criminal Procedure. The State concedes the error, but argues that it should be remedied under rule 30 of the Utah Rules of Criminal Procedure. After reviewing the record, we note that the error is only in the description of the offense in the Sentence, Judgment, Commitment. "[A]n error made in recording the judgment is clerical," and the appropriate remedy is rule 30(b). *State v. Watring*, 2017 UT App 100, ¶ 13, 400 P.3d 1148; *see also* Utah R. Crim. P. 30(b). We encourage Peterson to make the appropriate motion to the trial court, which is able to remedy the error at any time. *See State v. Cady*, 2018 UT App 8, ¶ 41 n.9, 414 P.3d 974.

2. Peterson also filed a rule 23B motion under the Utah Rules of Appellate Procedure for a remand to supplement the record to pursue a claim of ineffective assistance of counsel regarding an alleged failure by trial counsel to move to disqualify the entire Salt Lake County District Attorney's Office for an alleged conflict of interest by a single prosecutor. Peterson claims that a

(continued…)

directed verdict, arguing there was insufficient evidence to support the aggravated kidnapping charge. "We will uphold a trial court's denial of a motion for directed verdict based on a claim of insufficiency of the evidence if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168 (cleaned up).

¶9　Second, Peterson argues that his trial counsel provided constitutionally ineffective assistance with regard to the motion to merge the aggravated kidnapping and aggravated assault offenses. "An ineffective assistance of counsel claim raised for

---

(…continued)

conflict existed because a federal civil rights lawsuit he filed against Salt Lake County—stemming from a separate criminal case—was pending at the time of his prosecution in this case, and because one prosecutor participated in both criminal cases. "A remand under rule 23B will only be granted upon a nonspeculative allegation of facts . . . which, if true, could support a determination that counsel was ineffective." *State v. Bowen*, 2019 UT App 163, ¶ 21 n.9, 451 P.3d 1050 (cleaned up); *see* Utah R. App. P. 23B(a). Peterson does not offer the necessary facts to support his speculative allegation that a conflict existed—his basis for asserting trial counsel was ineffective. *See Bowen*, 2019 UT App 163, ¶ 21 n.9. The federal court complaint contains no claim against the prosecutor, nor any allegation critical of the actions of the prosecutor, which may have given rise to a conflict of interest concerning Peterson or the charges of this case. *See State v. Balfour*, 2008 UT App 410, ¶ 33, 198 P.3d 471 ("Utah courts have found disqualification proper whenever the prosecutor has a conflict of interest with the charges or the defendant."). We therefore deny Peterson's motion because it fails to assert a nonspeculative allegation of facts concerning the existence of a conflict.

the first time on appeal presents a question of law," which we review for correctness. *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (cleaned up).

ANALYSIS

I. Insufficient Evidence

¶10    Peterson challenges his conviction for aggravated kidnapping, arguing that there was insufficient evidence to prove the element that requires the detention or restraint be against the will of the victim. *See* Utah Code Ann. § 76-5-302(1) (LexisNexis Supp. 2019) (aggravated kidnapping requires either unlawful detention or kidnapping); *see also id.* § 76-5-304(1) (unlawful detention requires action against will of victim); *id.* § 76-5-301(1) (2017) (kidnapping requires same).[3] Peterson therefore must "show that, when viewed in the light most favorable to the State, no evidence existed from which a reasonable jury could find beyond a reasonable doubt" that Wife's detention or restraint was against her will. *See State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168; *see also* Utah Code Ann. §§ 76-5-301(1), -304(1). Peterson does not satisfy this burden.

¶11    An unlawful detention or kidnapping begins the instant a defendant detains or restrains a victim "against the will of the victim." *State v. Couch*, 635 P.2d 89, 93 (Utah 1981). Evidence that a detention or restraint is against the will of a victim may derive from verbal expressions of disapproval or actions taken to resist the detention or restraint. *See id.* (holding detention was against will of victim because victim verbally expressed desire for

3. The statutory provisions in effect at the relevant time do not differ in any way material to this case from the current provisions. We therefore cite the current Utah Code for convenience.

defendant to stop the car); *see also State v. Kirby*, 2016 UT App 193, ¶¶ 19–21, 382 P.3d 644 (observing victim was unlawfully detained based, in part, on her attempt to retrieve her suitcase and leave). Additionally, the facts and circumstances particular to a detention or restraint may provide evidence of a victim's state of mind. *See Kirby*, 2016 UT App 193, ¶ 19 (observing that despite the victim's unavailed opportunities to escape, the unlawful detention was ongoing because defendant instructed her not to leave and had previously beaten her for attempting to leave).

¶12 Peterson contends that there was insufficient evidence to support the aggravated kidnapping charge. He asserts that Wife willingly got into his car at the studio, that Wife willingly re-entered the car at the overpass, that he was just keeping Wife safe when he acted to prevent her from jumping from his car on the freeway, and that he merely "asked" Wife to clean herself up at the water fountain. Peterson's characterization of the events is unavailing.

¶13 First, there is evidence that Wife was detained against her will when she was forced to re-enter the car at the overpass. Wife manifested her desire to be free from Peterson's detention in the car by exiting the slow-moving car as it approached the overpass. Peterson had to physically push and threaten her to get her to re-enter the car. Although it is true that Wife re-entered the car, at least partially, by operation of her own motor function, she did not do so willingly. Peterson previously hit Wife and alluded to the trouble she would face if they encountered law enforcement while she had alcohol in her system. Wife was given the ultimatums of being beaten until she complied, causing a scene and being arrested, or complying by returning to the car. Wife's choice among Peterson's ultimatums does not make her a willing participant in the decision. Peterson could have allowed Wife to walk away; he did not do so, and her forced decision that followed does not indicate that she re-entered the car volitionally. Based on the facts and

circumstances, a reasonable jury could find that the State proved beyond a reasonable doubt that Wife re-entered the car, not of her own volition, but out of fear of being beaten or fear of being exposed to law enforcement.

¶14   Second, there is evidence that Wife was restrained against her will when she tried to jump out of the car while traveling on the freeway. Regardless of the prudence of Wife's decision to attempt to leap from the car, Wife's conduct manifested her desire to be free of Peterson's restraint in the car and the accompanying physical abuse. Peterson's claim that his actions to restrain her were motivated by his desire to save her from injury is belied by the beatings he administered to her throughout the car ride—despite her desperate demands, pleas, and offers to get him to stop—and the fact that he could have pulled over and let her out at any time. Based on either Wife's verbal resistance or her physical attempt to escape, a reasonable jury could find that the State proved beyond a reasonable doubt that Wife was restrained against her will by Peterson during the drive.

¶15   Third, evidence exists that Wife was detained or restrained against her will when she was forced to the drinking fountain and then back into the car. On arriving at the park, Peterson physically pulled Wife out of the car and forced her to a water fountain to clean herself off. When the officer arrived, Wife was back in the car being punched by Peterson. On seeing the officer's vehicle, Wife escaped from Peterson and cried out for the officer to intervene. Based on the foregoing facts, a jury could find that the State proved beyond a reasonable doubt that Wife was detained or restrained against her will by Peterson as he forced her to the water fountain and back into the car.

¶16   Viewing the facts in the light most favorable to the State, we hold that a reasonable jury could find that the State proved beyond a reasonable doubt that Wife was detained or

restrained against her will by Peterson at multiple points throughout the hours-long ordeal. Because at least some evidence exists—in this case, plenty—from which a reasonable jury could find that the disputed element of the aggravated kidnapping charge was proven beyond a reasonable doubt, we uphold the trial court's denial of the motion for directed verdict.

## II. Ineffective Assistance of Counsel

¶17 Peterson's trial counsel made a motion to merge the aggravated kidnapping conviction into the aggravated assault conviction under the then-available common-law doctrine, but counsel did not include an argument that the aggravated assault conviction should merge into the aggravated kidnapping conviction under the merger statute. *See* Utah Code Ann. § 76-1-402 (LexisNexis 2017). Peterson asserts that absence of the latter argument was constitutionally ineffective assistance of counsel. We disagree.

¶18 To prevail on an ineffective assistance of counsel claim, a defendant must establish both that counsel's performance was objectively deficient—meaning counsel rendered demonstrably deficient performance by objectively unreasonable conduct—and that the deficient performance prejudiced the defense—meaning there is a reasonable probability that, but for counsel's error, the defendant would have obtained a more favorable outcome. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also State v. Scott*, 2020 UT 13, ¶¶ 34–36; *State v. Popp*, 2019 UT App 173, ¶¶ 25–26, 453 P.3d 657. "A failure to prove either element defeats the claim." *State v. Ricks*, 2018 UT App 183, ¶ 11, 436 P.3d 350 (cleaned up). Importantly, counsel is not deficient for declining to make a motion, objection, or request that is futile. *E.g., State v. Farnworth*, 2018 UT App 23, ¶ 53, 414 P.3d 1053 (holding trial counsel was not deficient for declining to move for merger because offenses were not based on same facts and motion would have been futile).

¶19    At the time of the merger motion, Utah recognized a common-law merger doctrine[4]—referred to as the *Finlayson* test—as well as statutory merger under Utah Code section 76-1-402. The *Finlayson* test was known as an unwieldy, unpredictable test—attributes which, in part, led to its demise. *State v. Wilder*, 2018 UT 17, ¶¶ 27, 29, 38, 420 P.3d 1064. But the test enabled defendants convicted of kidnapping to avoid an additional conviction because a prosecutor had to show a kidnapping victim's confinement was not inconsequential and not inherent in the other offense, but had independent significance and "was longer than the necessary detention involved in the commission of the [other offense]." *State v. Finlayson*, 2000 UT 10, ¶ 19, 994 P.2d 1243, *overruled by Wilder*, 2018 UT 17.

¶20    By contrast, the merger statute dictated that

> when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision . . . .
>
> . . . .
>
> A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense.

Utah Code Ann. § 76-1-402(1), (3). Thus, the statute precluded merger of offenses if the offenses were based on separate acts—a more bright-line test. *E.g.*, *State v. Garrido*, 2013 UT App 245, ¶ 31, 314 P.3d 1014 ("Even if there is overlap in the statutory

---

4. The common-law merger test was renounced in *State v. Wilder*, 2018 UT 17, 420 P.3d 1064.

elements, if the convictions rely on materially different acts, then one crime will not be a lesser included offense of another." (cleaned up)). At the time of the motion, case law clearly dictated "that aggravated assault does not merge with aggravated kidnapping" when the "convictions can be supported by materially different acts." *Id.* ¶¶ 33, 35 (cleaned up). Reasonable trial counsel would have been aware of the existing case law and would have recognized that, based on the evidence of this case, a court would conclude that materially different acts formed the bases of the convictions and that a motion for merger under the statute would fail.

¶21    To discern whether materially different acts support each conviction, we consider a defendant's conduct in isolation to determine whether distinct acts gave rise to each offense. *See Farnworth*, 2018 UT App 23, ¶¶ 50–53 (considering acts in isolation). In making this evaluation, we view the evidence in the light most favorable to the jury's verdict. *Garrido*, 2013 UT App 245, ¶ 31.

¶22    As is relevant in this case, a conviction for aggravated assault requires proof of an act of unlawful force or violence, which is likely to produce death or serious bodily injury, and which actually results in serious bodily injury. Utah Code Ann. § 76-5-103 (Supp. 2019). Aggravated kidnapping requires proof of an act with intent to inflict bodily injury on a victim and which actually causes serious bodily injury during the commission of unlawful detention or kidnapping. *Id.* § 76-5-302. As discussed, both unlawful detention and kidnapping require an act of detaining or restraining a victim against her will; kidnapping additionally requires the act be for a substantial period or expose the victim to risk of bodily injury. *Id.* §§ 76-5-301, -304. We previously identified three distinct times when Wife was detained or restrained against her will. *See supra* ¶¶ 13–15. A jury could conclude that the intervening periods were also against Wife's will and constituted substantial periods of time or were circumstances that exposed her to the risk of

bodily injury. In other words, the commission of the predicate offense supporting the aggravated kidnapping conviction extended from Wife's forced re-entry into the car at the overpass to the officer's intervention at the park. The issue becomes whether Peterson acted with intent to and did cause Wife serious bodily injury during that period (supporting a conviction for aggravated kidnapping); and independent of that action, whether Peterson acted with unlawful force or violence that was likely to produce death or serious bodily injury, and which actually resulted in serious bodily injury, regardless of whether it was during that period or not (supporting a conviction of aggravated assault).

¶23   Importantly, serious bodily injury is defined as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code Ann. § 76-1-601(15). We do not need to identify whether the jury could with particularity determine which of Peterson's strikes caused Wife serious bodily injury. *See State v. Yazzie*, 2017 UT App 138, ¶ 25, 402 P.3d 165 ("Because the force behind each blow differs, a jury . . . may infer from other evidence how much force a defendant actually used and whether that force was likely to cause serious bodily injury under the particular facts of the case." (cleaned up)); *State v. Walker*, 2017 UT App 2, ¶ 26, 391 P.3d 380 (serious bodily injury determination is based on particular facts of a case). Rather, we need only identify whether evidence of materially different acts exists to support a jury's conclusion that Peterson was separately guilty of both offenses. *See Garrido*, 2013 UT App 245, ¶¶ 32–34 (observing the jury had evidence to support multiple variants of each crime, and distinct occasions within the episode permitted a finding of materially different acts).

¶24   In *State v. Garrido* we considered a defendant's argument for merger of his aggravated assault conviction into his aggravated kidnapping or aggravated burglary convictions. 2013

UT App 245, ¶ 30. The defendant in that case had unlawfully entered the victim's home with a stolen key, remained there armed with a knife, threatened to kill the victim, and held the victim there against her will. *Id.* ¶ 33. Although the events all transpired as part of a single episode, we determined merger was not appropriate because the convictions relied on materially different acts. *Id.* In doing so, we analyzed the actions undertaken by the defendant throughout the extended detention to discern at least three distinct occasions when the knife was used: unlawfully remaining in the home while possessing the knife, threatening to kill the victim while possessing the knife, and using the knife to hold victim against her will. *Id.* Because we could identify materially different acts, we upheld the separate convictions. *Id.*

¶25    Similarly, in *State v. Farnworth* we concluded merger of the defendant's reckless driving offense with the aggravated assault offense was not appropriate. 2018 UT App 23, ¶ 52. Farnworth, while driving, had intentionally swerved at a motorcycle three times, forcing the motorcyclist and his passenger into oncoming traffic and ultimately causing them to crash. *Id.* We observed the first two swerves went toward the reckless driving offense and the third supported the aggravated assault offense. *Id.* ¶ 53. We therefore held that the convictions were not based on the same facts and would not merge. *Id.*

¶26    Here, we are able to identify two materially different acts to support the two separate convictions based on an intervening occurrence; a point in the ordeal that would enable the jury to delineate the abusive conduct into two distinct acts, each resulting in serious bodily injury to Wife. First, a jury could reasonably find, based on the evidence of the case, that Peterson committed aggravated kidnapping before Wife was forced to clean herself off at the water fountain in the park. As we have recounted, Peterson repeatedly and intentionally beat Wife during the car ride while she was detained against her will. Up to the point when Wife was forced to clean herself off at the

water fountain, Peterson had beaten her so severely that when she put her face in her hands, "there were chunks of teeth and blood." A jury, looking to the means and manner of injury, along with the attendant circumstances, could reasonably conclude that Peterson's acts up to that point caused Wife serious bodily injury. *See Walker*, 2017 UT App 2, ¶ 26.

¶27 Second, a jury could reasonably find that Peterson committed aggravated assault after Wife was forced to clean herself off at the drinking fountain. When the officer arrived at the park, he observed Peterson punching something in the back seat. Thereafter, Wife emerged from the back seat, crying for help. The officer observed that Wife was "disfigured. . . . Her head was misshapen," and more critically, she was covered in both dried and fresh blood, with fresh bleeding from "her nose, her eyes, [and] her ears." Based on Peterson's additional strikes and the fresh blood from critical areas of Wife's head, a jury could reasonably conclude that after Wife cleaned herself off at the water fountain, Peterson acted with unlawful force that was likely to produce death or serious bodily injury and actually caused Wife additional serious bodily injury. *See id*.

¶28 Therefore, Peterson's actions preceding the cleanup at the water fountain support his conviction of aggravated kidnapping, and are materially different from his actions undertaken afterward that support his conviction for aggravated assault. Accordingly, Peterson could not have established that the exact same conduct supported the two convictions, precluding merger of the offenses.[5] *See Farnworth*, 2018 UT App 23, ¶ 51 (rejecting

---

5. Despite Peterson's argument comparing the statutory elements of the specific variations of the crimes at issue here, we do not reach the two-part test used in determining whether a conviction for a second offense arising out of the same set of facts violates Utah Code section 76-1-402(3)(a), because the record shows that materially different acts supported the

(continued…)

merger argument because defendant could not "establish that the exact same conduct supported his convictions" (cleaned up)); *see also Met v. State*, 2016 UT 51, ¶ 139, 388 P.3d 447 (Lee, A.C.J., concurring) ("[The merger] statute seems . . . to leave no room . . . to prescribe merger for crimes . . . that arise out of *virtually* the same conduct, or . . . *essentially* the same act." (cleaned up)).

¶29   Reasonable trial counsel could have anticipated that a statutory motion for merger of the aggravated assault conviction into the aggravated kidnapping conviction under the facts of this case would have been futile. Accordingly, trial counsel's conduct was objectively reasonable at the time, and Peterson did not receive constitutionally ineffective assistance.

CONCLUSION

¶30   We conclude there is some evidence to support a reasonable jury's finding that the State proved beyond a reasonable doubt that Wife was detained or restrained against her will throughout the episode, supporting the aggravated kidnapping charge. And we hold that Peterson's trial counsel was not deficient for declining to move for merger of the aggravated assault offense into the aggravated kidnapping offense under the merger statute because the convictions were based on materially different acts. We therefore uphold the trial court's denial of Peterson's motion for directed verdict and conclude that Peterson did not receive ineffective assistance of counsel; affirming his convictions for both aggravated assault and aggravated kidnapping.

———————

(…continued)

separate convictions for aggravated assault and aggravated kidnapping. *See State v. Farnworth*, 2018 UT App 23, ¶ 50, 414 P.3d 1053.