**2024 UT App 159**

# THE UTAH COURT OF APPEALS

TIMOTHY JAMES PETERSON,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20220765-CA
Filed November 7, 2024

Third District Court, West Jordan Department
The Honorable Chelsea Koch
No. 210903613

Dain Smoland, Debra M. Nelson, Benjamin Miller,
and Ian Quiel, Attorneys for Appellant

Sean D. Reyes and Daniel L. Day,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1 A jury convicted Timothy James Peterson of aggravated kidnapping, aggravated assault, and failure to stop at a law enforcement officer's command, and we affirmed these convictions on direct appeal.

¶2 Peterson later filed a pro se petition for postconviction relief. The district court dismissed several of Peterson's claims, concluding that they were procedurally barred. Peterson soon filed correspondence asking the court to vacate that dismissal. The district court treated this correspondence as a rule 60(b) motion, but the court then denied that motion. The district court later issued a ruling denying Peterson's request for the appointment of

counsel, after which it issued a ruling granting the State's request for summary judgment on the remainder of Peterson's claims.

¶3 On appeal, Peterson first challenges the denial of his rule 60(b) motion. As set forth below, we agree with Peterson that the court erred in denying that motion, so we reverse the district court's decision. Peterson next challenges the court's denial of his motion to appoint counsel. But we see no abuse of discretion in the court's ruling, so we decline to reverse that decision.

BACKGROUND

¶4 The facts that led to Peterson's criminal convictions are set forth in *State v. Peterson*, 2020 UT App 47, ¶¶ 1–7, 462 P.3d 421, and we need not recount them at length here. In brief, a jury convicted Peterson of aggravated kidnapping, aggravated assault, and failure to stop at a law enforcement officer's command. *See id.* ¶ 1. These convictions were based on trial testimony showing that Peterson violently assaulted his wife over the course of several hours (leaving her with a variety of injuries to her face, teeth, and body), prevented her from escaping, and then fled when a police officer saw them and tried intervening. *See id.* ¶¶ 2–5. We affirmed Peterson's convictions on direct appeal, *id.* ¶ 30, and the Utah Supreme Court denied Peterson's request for a writ of certiorari, *see State v. Peterson*, 470 P.3d 445 (Utah 2020).

¶5 In July 2021, Peterson—who was incarcerated at the Utah State Prison at the time—filed a pro se petition for relief under the Postconviction Remedies Act (the PCRA). *See generally* Utah Code §§ 78B-9-101 to -503. Peterson raised six claims in this postconviction petition. Four of the claims alleged that his trial counsel had provided ineffective assistance—namely, Peterson alleged that counsel was ineffective for (1) not moving to strike certain testimony, (2) not moving for a mistrial based on what Peterson believed were weaknesses in testimony from one of the State's witnesses, (3) not objecting to certain questions the

prosecutor asked at trial, and (4) not objecting to the composition of the jury. Peterson's remaining two claims (the *Brady* claims) alleged that the prosecution had failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

¶6 Rule 65C of the Utah Rules of Civil Procedure "governs proceedings in all petitions for post-conviction relief." Utah R. Civ. P. 65C(a). In a subsection entitled "Summary Dismissal of Claims," the rule states that after a postconviction petition has been filed, the assigned judge must conduct an initial review of the petition and dismiss any claim that was "adjudicated in a prior proceeding" or "appears frivolous on its face." *Id.* R. 65C(h)(1). In August 2021, the district court conducted this review and then issued a ruling stating that none of Peterson's claims should be dismissed under this standard. In that same order, however, the court observed that, in its view, Peterson's claims of ineffective assistance of trial counsel were likely procedurally barred because they could have been brought during the direct appeal but were not. *See* Utah Code § 78B-9-106(1)(c).

¶7 That same day, the district court issued a separate order that was captioned as an order to show cause. There, the court again observed that Peterson's ineffective assistance of trial counsel claims were likely procedurally barred because they could have been raised on direct appeal. The court then gave Peterson 21 days in which "to file a memorandum explaining why the challenged claims should not be dismissed," stating that if no memorandum was filed, the court would "dismiss the claims for ineffective assistance of trial counsel at that time."

¶8 In December 2021, the court issued a ruling (the December Ruling) in which it stated that Peterson had not responded to the order to show cause. The court accordingly dismissed Peterson's ineffective assistance of trial counsel claims.

¶9 About two weeks later, Peterson sent a handwritten letter to the court asserting that he had in fact timely responded to the order to show cause, and Peterson supported this assertion with

scans from the jail notary and mail service that allegedly corroborated his claim.

¶10    A few days after sending this letter, Peterson resent the "packet" that he claimed he had sent the first time. This packet included a memorandum in which Peterson argued against dismissal of his claims. There, he alleged that he had discovered the support for his ineffective assistance of trial counsel claims while reviewing trial transcripts and exhibits after his appeal had concluded. Of note for this appeal, Peterson also included a "motion to amend" in which he asked the court for leave to add a claim of ineffective assistance of appellate counsel, recognizing that such a claim serves as "the gateway to the otherwise procedurally barred trial counsel claim[s]." In the proposed ineffective assistance of appellate counsel claim, Peterson argued that his appellate counsel was ineffective for "not do[ing] a proper investigation," as well as for not raising the ineffective assistance of trial counsel claims that appellate counsel "should have discovered with her background and expertise."

¶11    These documents (and many of Peterson's subsequent filings) were only sent to the court, so the State was not properly provided with notice of them. Upon realizing this, the court issued an order notifying the State that Peterson's "correspondence" had "been added to the docket." In that same order, the court observed that although Peterson had not "specifically cite[d] Rule 60(b) of the Utah Rules of Civil Procedure," it would "interpret[] the correspondence as such a motion" because Peterson was "essentially requesting that [the] Court set aside" the December Ruling.[1] The court then gave the State time to respond.

---

1. In light of this, we'll refer to Peterson's correspondence as "the rule 60(b) motion" moving forward, even though, as indicated, Peterson did not refer to that rule in his initial correspondence.

(continued…)

¶12 A short time later, Peterson filed a motion asking the court to appoint postconviction counsel to represent him for the remainder of the postconviction proceedings.[2]

¶13 Before the court ruled on that request, the State filed a motion for summary judgment on the *Brady* claims. Peterson later filed a pro se opposition to that motion. In his opposition, Peterson included copies of various documents (including trial transcripts, communications with his trial counsel, and the State's summary judgment motion), and Peterson added handwritten commentary and arguments in the margins of those documents. When the State later filed a reply to Peterson's opposition, the State referred to what it described as Peterson's "largely incomprehensible or otherwise unreadable marginalia and editorial marks." The State also filed an opposition to Peterson's rule 60(b) motion. There, the State argued that Peterson's ineffective assistance of trial counsel claims were procedurally barred because they could have been raised on direct appeal but were not. The State then acknowledged, however, that the PCRA does "permit[] an appellate counsel ineffectiveness claim to assess the question of whether a properly brought trial counsel claim would have made any difference on direct appeal"—i.e., the State agreed that an "appellate counsel claim is the gateway to the otherwise procedurally barred trial counsel claim." But the State pointed out that Peterson's original petition had not "allege[d] appellate counsel ineffectiveness." And while the State noted that Peterson had now "include[d] among his various letters and

---

We also note that, on appeal, the State has not argued that the court erred in treating this correspondence as a rule 60(b) motion.

2. For purposes of this opinion, we'll use the phrase "postconviction counsel" when discussing Peterson's request for representation at the district court stage of the postconviction proceeding. We'll use the phrase "postconviction appellate counsel" to refer to Peterson's separate (and subsequent) request for representation in this appeal from the dismissal of the postconviction petition.

attachments . . . a 'motion to amend' his petition to add an appellate counsel ineffectiveness claim," the State argued that "granting an amendment" was not a recognized basis for affording relief under rule 60(b) so the amended claim should not factor into the court's consideration in entertaining the rule 60(b) motion. And finally, the State argued that Peterson had not proven that he had filed his "packet" when he said he did, and, thus, that he had not established that he was entitled to relief under rule 60(b)'s terms.

¶14 After the filings described above, the district court issued an order denying Peterson's request for the appointment of postconviction counsel. At the outset of the order, the court first recited some of the factors set forth in Utah Code section 78B-9-109(1). The court then ruled that it would not appoint counsel because it was "satisfied . . . that an evidentiary hearing [would] not be required" and "the issues presented in the petition [were] not complex and the petitioner appear[ed] to be fully capable of presenting his claims in a clear and articulate manner."

¶15 In April 2022, the court issued a ruling deciding both Peterson's rule 60(b) motion and the State's motion for summary judgment on the *Brady* claims.

¶16 With respect to the rule 60(b) motion, the court again concluded that Peterson's ineffective assistance of trial counsel claims were procedurally barred because they "'could have been but [were] not raised in the trial court, at trial, or on appeal.'" (Quoting Utah Code § 78B-9-106(1)(c).) Addressing the proposed ineffective assistance of appellate counsel claim, the court put "aside the question of whether a Rule 60(b) motion is a proper vehicle for amending" a postconviction petition. Instead, the court turned directly to the question of whether Peterson would be entitled to rule 60(b) relief even if the motion to amend had been granted. In the court's view, he would not. The court explained:

> Missing from Peterson's argument, however, is any explanation as to why the appellate counsel's failure to discover the factual basis underlying his trial counsel claims "fell below an objective standard of reasonableness" or that "there is a reasonable probability that, but for [appellate] counsel's unprofessional errors the result of the proceeding would have been different." [(Quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (alteration in original).)] This would be fatal to his case even if the Court were to set aside its December [Ruling] and grant Peterson leave to amend the petition to include his ineffective assistance of appellate counsel claim.

¶17  With respect to the State's motion for summary judgment on the *Brady* claims, the court concluded that the State was entitled to judgment as a matter of law. It thus dismissed those claims.[3]

¶18  After the court issued its final judgment, Peterson filed a notice of appeal, which was accompanied by a request for the appointment of postconviction appellate counsel. On temporary remand from this court, the district court issued an order in which it determined that the appointment of postconviction appellate counsel was "appropriate given [Peterson's] custody status and the complexity of the issues." In a footnote in that order, the court "note[d] that counsel was not appointed at the trial court level as the petition was summarily dismissed."

---

3. As will be seen below, some of the filings relating to the summary judgment motion are relevant to the issues before us. But Peterson has not challenged the actual dismissal of his *Brady* claims on appeal, so we do not set forth the basis for this ruling further.

## ISSUES AND STANDARDS OF REVIEW

¶19 On appeal, Peterson first challenges the district court's denial of his rule 60(b) motion. "We generally review a denial of a rule 60(b) motion for abuse of discretion." *State v. Ogden*, 2023 UT 23, ¶ 17, 538 P.3d 595. "But we review the legal conclusions embedded in the district court's denial of a rule 60(b) motion for correctness." *Id.* (quotation simplified). This includes a "district court's determination of whether a defense is meritorious." *Metropolitan Water Dist. v. Sorf*, 2013 UT 27, ¶ 13, 304 P.3d 824 (quotation simplified).

¶20 Peterson next challenges the court's denial of his request for postconviction counsel. When such a request is "grounded in the PCRA," we review the court's "denial of a motion to appoint counsel for an abuse of discretion." *Carrell v. State*, 2023 UT App 93, ¶ 23, 536 P.3d 653 (quotation simplified), *cert. denied*, 540 P.3d 81 (Utah 2023).

## ANALYSIS

### I. The Rule 60(b) Motion

¶21 In the December Ruling, the district court dismissed Peterson's ineffective assistance of trial counsel claims based on its conclusion that they were procedurally barred. Peterson subsequently filed what's been treated as a rule 60(b) motion, wherein he asked the court to vacate that ruling. As part of the correspondence that the court treated as this motion, Peterson also filed a motion to amend his postconviction petition to add an ineffective assistance of appellate counsel claim. The district court later denied the rule 60(b) motion. Peterson now challenges that denial on appeal. For the reasons set forth below, we reverse.

A.      Denial of the Rule 60(b) Motion

¶22    Under rule 60(b), a district court may set aside "a judgment, order, or proceeding" when a party makes a timely motion and asserts one of several enumerated bases. Utah R. Civ. P. 60(b).

¶23    Peterson first argues that the district court erred by essentially skipping two required steps. Under our precedent, Peterson is correct. "To obtain relief under rule 60(b) of the Utah Rules of Civil Procedure, a party must show that (1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Rojas v. Montoya*, 2020 UT App 153, ¶ 13, 477 P.3d 38 (quotation simplified). "These considerations should be addressed in a serial manner." *Id.* (quotation simplified). "In other words, there is no need to consider whether there is a basis for setting aside a judgment if the motion was not made in a timely manner." *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322 (quotation simplified). "And it is unnecessary, and moreover inappropriate, to even consider the issue of a meritorious defense unless the court is satisfied that a sufficient excuse has been shown." *Id.* (quotation simplified); *accord Swallow v. Kennard*, 2008 UT App 134, ¶ 21, 183 P.3d 1052; *see also Board of Educ. of Granite School Dist. v. Cox*, 384 P.2d 806, 808 (Utah 1963) (noting that the question of whether the movant proposed a meritorious defense "arises only after consideration of" "why" the movant "did not answer" and whether a "sufficient excuse" has been shown).

¶24    In the district court's ruling on Peterson's rule 60(b) motion, the court did not determine whether Peterson's motion was timely, nor did it determine whether he had provided a basis for granting relief under any particular subsection of rule 60(b). Instead, the court went directly to the third step, denying his motion based on its assessment of the lack of merit of Peterson's ineffective assistance of trial and appellate counsel claims. By doing so, the court failed to address the first two steps "in a serial

manner" as set forth in our cases. *Rojas*, 2020 UT App 153, ¶ 13 (quotation simplified). It thus exceeded its discretion. *See Mintz v. Mintz*, 2023 UT App 17, ¶ 11, 525 P.3d 534 ("[M]isapplication of the law is a de facto abuse of discretion."), *cert. denied*, 531 P.3d 730 (Utah 2023).

¶25 In theory, however, this error could be deemed harmless if we conclude that the district court acted within its discretion in ruling that Peterson lacked a meritorious defense. *See* Utah R. Civ. P. 61; *see also Sabour v. Koller*, 2024 UT App 26, ¶ 34, 546 P.3d 28 ("Even if the trial court exceeded its discretion . . . , an appellant has the burden to show that the error was substantial and prejudicial, meaning that the appellant was deprived in some manner of a full and fair consideration of the disputed issues by the trier of fact." (quotation simplified)). But Peterson argues that the court erred here too, and we agree.

¶26 Again, the third step of the rule 60(b) analysis considers whether "the movant has alleged a meritorious defense." *Rojas*, 2020 UT App 153, ¶ 13 (quotation simplified). Our supreme court has held that this step requires "a litigant seeking rule 60(b) relief [to] proffer some defense of at least sufficient ostensible merit as would justify a trial on the issue thus raised." *Menzies v. Galetka*, 2006 UT 81, ¶ 108, 150 P.3d 480 (quotation simplified). But "this requirement does not set an overly burdensome threshold." *Young v. Hagel*, 2020 UT App 100, ¶ 21, 469 P.3d 1136 (quotation simplified). Instead, the demonstration of a meritorious defense "requires . . . only that a party state the basis for its claims or defenses in short and plain terms." *Asset Acceptance*, 2016 UT App 84, ¶ 11 (quotation simplified). "Utah jurisprudence is abundantly clear that proof beyond allegations stating a claim or defense is unnecessary." *Somer v. Somer*, 2020 UT App 93, ¶ 11 n.5, 467 P.3d 924. "Thus, where a party presents a clear and specific proffer of a defense that, if proven, would warrant relief by the claimant[,] it has adequately shown a nonfrivolous and meritorious defense." *Menzies*, 2006 UT 81, ¶ 108 (quotation simplified).

¶27    In considering this step, the district court concluded that none of Peterson's claims were meritorious. To the extent that the court concluded that Peterson's ineffective assistance of trial counsel claims were not meritorious, we readily agree. Under the PCRA, a "petitioner is not eligible for relief under this chapter upon any ground that . . . could have been but was not raised . . . on appeal." Utah Code § 78B-9-106(1)(c). "A claim could have been raised—and therefore is subject to the procedural bar— when a defendant or the defendant's counsel is aware of the essential factual basis for asserting it." *Modes v. State*, 2023 UT App 104, ¶ 12, 537 P.3d 265 (quotation simplified). The procedural bar thus "applies to claims for ineffective assistance of trial counsel" that could have been brought by appellate counsel. *Gordon v. State*, 2016 UT App 190, ¶ 35, 382 P.3d 1063.

¶28    As indicated above, Peterson's ineffective assistance of trial counsel claims were each based on trial counsel's failure to file a motion in response to something that occurred at trial. The essential factual bases for these claims would have therefore been apparent to appellate counsel upon reviewing the trial transcript, so these claims were accordingly subject to the procedural bar. As a result, the district court did not err in concluding that these claims failed under the third step.

¶29    But we see things differently with respect to Peterson's proposed ineffective assistance of appellate counsel claim. The PCRA states that, "[n]otwithstanding" the procedural bar, "a petitioner may be eligible for relief on a basis that the ground could have been but was not raised . . . on appeal, if the failure to raise that ground was due to ineffective assistance of counsel." Utah Code § 78B-9-106(3)(a). In this sense, while "the PCRA bars" a petitioner's "direct claims against trial counsel," a petitioner "can still assert those claims through the lens of an appellate ineffectiveness claim." *McCloud v. State*, 2021 UT 51, ¶ 38, 496 P.3d 179 (quotation simplified); *accord Modes*, 2023 UT App 104, ¶ 19.

¶30    The district court acknowledged this, but it nevertheless concluded that Peterson's proposed appellate counsel claim was

not meritorious because Peterson had not provided "any explanation as to why the appellate counsel's failure to discover the factual basis underlying his trial counsel claims 'fell below an objective standard of reasonableness,'" nor had he shown that there was "'a reasonable probability that, but for [appellate] counsel's unprofessional errors the result of the proceeding would have been different.'" (Quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (alteration in original).)

¶31 But the district court required too much. As noted, for purposes of the third step of the rule 60(b) analysis, "the demonstration of a meritorious defense requires . . . only that a party state the basis for its claims or defenses in short and plain terms." *Asset Acceptance*, 2016 UT App 84, ¶ 11 (quotation simplified). And "Utah jurisprudence is abundantly clear that proof beyond allegations stating a claim or defense is unnecessary." *Somer*, 2020 UT App 93, ¶ 11 n.5.

¶32 Peterson did enough to satisfy this standard. In his motion to amend, Peterson sought leave to "add[] a claim of ineffective [assistance] of [appellate] counsel," and he further cited Utah Code section 78B-9-106(3)(a), explaining that "the [appellate] counsel claim is the gateway to the otherwise procedurally barred trial counsel claim." With respect to his proposed amended claim, Peterson alleged that his appellate counsel "did not do a proper investigation in the appeal[]—such as raising the other claims that were not discovered," and he further alleged that appellate counsel "should have discovered [these claims] with her background and expertise." Peterson also included a memorandum of support in which he stated that he had previously raised "grounds to the court that [appellate] counsel should have had no problem discovering," especially given that appellate counsel "had more information" and "more legal experience." Peterson asserted that "not only was [appellate] counsel ineffective by not raising all grounds possible," but that she had "hampered" him by not "providing all transcripts of trial

proceedings" and seeking his input on potential arguments.[4] Peterson thus argued that appellate "counsel should have been able to raise more grounds than what was in the brief."

¶33 Despite all this, the State claims that Peterson did not present a meritorious defense. The State offers two primary reasons for this assertion.

¶34 First, the State suggests that Peterson's proposed appellate counsel claim was limited to the assertion that "appellate counsel should have *discovered* the factual bases for his ineffective assistance of trial counsel claims," which the State views as being "different from claiming that appellate counsel was ineffective for not *raising* such claims on appeal." (Emphases added.) We're not sure that there really is such a difference, much less a meaningful one. Peterson was plainly seeking relief from his criminal convictions, and he expressed his awareness of the legal doctrine providing that an appellate counsel ineffectiveness claim is the gateway for raising an otherwise procedurally barred claim. As a result, when he faulted his appellate counsel for not discovering certain claims, it stands to reason that he wasn't proposing this as a mere academic exercise in curiosity. Rather, Peterson was suggesting that appellate counsel should have raised these claims too.

¶35 In any event, as a matter of record, the State's assertion about the scope of Peterson's argument is simply incorrect. In addition to faulting appellate counsel for not "discovering" the claims, Peterson alleged that appellate counsel was ineffective for not "raising the other claims that were not discovered," thus expressly linking his discovery claims to his failure-to-raise claims. And he further faulted appellate counsel for "not raising all grounds possible" and not "rais[ing] more grounds than what

---

4. As noted above, Peterson was pro se when he later reviewed the record and discovered the bases for the ineffective assistance of trial counsel claims that he raised in his original postconviction petition.

was in the brief." Thus, Peterson did ask for leave to argue that his appellate counsel was ineffective for not raising these claims, and the State's proposed distinction fails.

¶36 Second, echoing the conclusion of the district court, the State argues that Peterson's proposed appellate counsel claim was not meritorious because he did not sufficiently analyze how this claim satisfied the *Strickland* standard. But again, for purposes of this third step, Peterson was only required to "proffer . . . a defense that, *if proven*, would warrant relief," *Menzies*, 2006 UT 81, ¶ 108 (emphasis added, quotation otherwise simplified), and Peterson needed to simply state the "basis" for his claim "in short and plain terms," *Asset Acceptance*, 2016 UT App 84, ¶ 11 (quotation simplified).

¶37 Peterson did just that. Peterson stated that he intended to assert ineffective assistance of appellate counsel, he correctly acknowledged that an ineffective assistance of appellate counsel claim can act as the "gateway" to an otherwise barred claim, and he faulted his appellate counsel for "not raising all grounds possible" or "the other claims that were not discovered." In light of these filings, we conclude that Peterson did enough to satisfy the third step of the rule 60(b) analysis. Because this was the sole basis for the district court's decision to deny his rule 60(b) motion, we therefore reverse that decision and remand the case to the district court for further proceedings.

B.    Proceedings On Remand

¶38 Given the somewhat unique procedural posture of this case, we think it appropriate to note several things that remain open for consideration by the district court on remand.

¶39 First, we've held that the district court erred by not ruling on the first two steps of the rule 60(b) analysis. Although Peterson has given us some briefing on why he believes he satisfied those steps, we think that these decisions are best made by the district court in the first instance. *See, e.g., Metropolitan Water Dist. v. Sorf*,

2013 UT 27, ¶ 23, 304 P.3d 824 (remanding so the district court could make findings on the first two steps); *Sanders v. Sanders*, 2021 UT App 122, ¶ 4 n.3, 502 P.3d 1230 (same). After all, Peterson's claim is heavily tied to his assertion that he mailed a response to the court's order to show cause in a timely fashion, but this point is apparently in dispute. The district court is in a much better position to judge the facts, so it should be first to weigh in on those questions.

¶40 Thus, on remand, the district court should start by determining whether Peterson's rule 60(b) motion was timely. If the court concludes that it was, the court should then determine whether Peterson has provided some basis for granting relief under one of the subsections of rule 60(b). And we note too that "courts are generally encouraged to be indulgent toward setting a judgment aside where there is reasonable justification or excuse for the [movant's] failure to answer." *Silva v. Silva*, 2018 UT App 210, ¶ 16, 437 P.3d 593 (quotation simplified); *see also Menzies*, 2006 UT 81, ¶ 54 ("It is well established that 60(b) motions should be liberally granted because of the equitable nature of the rule. . . . Therefore, a district court should exercise its discretion in favor of granting relief so that controversies can be decided on the merits rather than on technicalities.").

¶41 Second, if the court concludes that Peterson did file a timely motion and that his motion provided some basis for relief under rule 60(b) (thus satisfying the first two steps), the court should then address a remaining question that has thus far been assumed but not actually decided—whether Peterson should be permitted to reopen the judgment to amend his petition. *See National Advert. Co. v. Murray City Corp.*, 2006 UT App 75, ¶ 13, 131 P.3d 872 ("In Utah, upon occurrence of a final adjudication, and thereafter, a party may not file an amended complaint. Instead, the party must move under rules 59(e) or 60(b) to reopen the judgment." (quotation simplified)). On this, the parties have given us some briefing as to whether Peterson should be allowed to amend his petition. But we decline to decide this in the first instance.

¶42    In a civil proceeding, "a party may amend its pleading only with the court's permission or the opposing party's written consent," and "[t]he court should freely give permission when justice requires." Utah R. Civ. P. 15(a)(2). This standard is "governed by a multi-factored, flexible inquiry that allows courts the leeway to evaluate the factual circumstances and legal developments involved in each particular case." *Lewis v. Nelson*, 2017 UT App 230, ¶ 14, 409 P.3d 149 (quotation simplified); *see also Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 46, 424 P.3d 72 ("That standard gives little guidance. More than anything, it underscores the breadth of discretion given to district judges on the matter of amendment."). Unless a motion to amend is decided on futility, "we will not disturb such a ruling absent a showing of an abuse of . . . discretion." *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 6, 314 P.3d 1079; *see also id.* ¶ 9 (indicating "a motion to amend [is] futile if the proposed amendment would not withstand a motion to dismiss" and is thus a question of law reviewed for correctness (quotation simplified)).

¶43    "The primary function of a standard of review is to apportion power and, consequently, responsibility between trial and appellate courts for determining an issue." *Widdison v. Widdison*, 2022 UT App 46, ¶ 57, 509 P.3d 242 (quotation simplified). As helpfully explained by the Tenth Circuit, the abuse of discretion standard of review applies to the kinds of "judgment call[s]" for which a district court is tasked with making. *United States v. Clark*, 717 F.3d 790, 811 (10th Cir. 2013). When making such judgment calls, district courts "consider a vast array of contextually specific matters related to the way the proceedings have advanced," and the resultant decisions are those for which "there will not necessarily be a single right answer, but a range of possible outcomes the facts and law at issue can fairly support." *Id.* (quotation simplified). Once a district court has made a discretionary decision, the appellate court defers to it unless "no reasonable person would take the view adopted by the district court." *State v. Gasper*, 2018 UT App 164, ¶ 26, 436 P.3d 200 (quotation simplified).

¶44 Thus, under both the express terms of the rule and our interpretive caselaw, the decision of whether to grant a motion to amend is a decision that's left for a district court to make. But while the parties have expressed their views about whether the motion to amend should be granted, we don't yet know whether the district court will exercise its discretion to grant it. And without that decision, we have nothing to review. We therefore leave it to the court to decide this question in the first instance.

## II. Motion to Appoint Postconviction Counsel

¶45 Peterson next argues that the district court abused its discretion when it declined to appoint postconviction counsel. In Peterson's view, the district court incorrectly determined that he was not statutorily eligible for the appointment of postconviction counsel and made a decision that was unreasonable anyway. We disagree on both fronts.

### A. Eligibility

¶46 The PCRA states that "[i]f any portion of the petition is not summarily dismissed, the court may, upon the request of an indigent petitioner, appoint counsel . . . to represent the petitioner in the postconviction court or on postconviction appeal." Utah Code § 78B-9-109(1)(a).[5] The statute then states that "in determining whether to appoint counsel, the court may consider" several factors, including "whether the petitioner is incarcerated," "the likelihood that an evidentiary hearing will be necessary," "the likelihood that an investigation will be necessary," "the complexity of the factual and legal issues," and "any other factor relevant to the particular case." *Id.* § 78B-9-109(2)(a)–(e).

¶47 In the ruling in which it denied Peterson's request for the appointment of postconviction counsel, the court cited this statute

---

5. This statute was amended after the proceedings below. Because the quoted text is the same in both versions, we cite the current version.

and then recited some of these factors, after which it stated that it would not appoint counsel because it was "satisfied . . . that an evidentiary hearing [would] not be required" and "the issues presented in the petition [were] not complex and the petitioner appear[ed] to be fully capable of presenting his claims in a clear and articulate manner." The court thus invoked the correct statute and made a determination under the proper scheme.

¶48  On appeal, however, Peterson claims that the court's decision was based on a fundamental misunderstanding of law. Namely, in Peterson's view, the district court incorrectly believed that he was not actually eligible for the appointment of postconviction counsel at all. The basis for this assertion requires some explanation. As noted, the governing statute allows the court to appoint postconviction counsel "[i]f any portion of the petition is not *summarily dismissed* . . . ." *Id.* § 78B-9-109(1)(a) (emphasis added). Although, as explained, the district court here considered and denied Peterson's request for the appointment of postconviction counsel during the proceedings before it, Peterson points out that in the order in which it later granted his request for the appointment of postconviction *appellate* counsel, the court indicated in a footnote that "counsel was not appointed at the trial court level as the petition was *summarily dismissed*." (Emphasis added.) Pointing to this reference, Peterson now surmises that the district court must have thought that he was ineligible for the appointment of postconviction counsel in the earlier stages because it had been "summarily dismissed."

¶49  In the briefing on this question, the parties both agree that, for purposes of section 78B-9-109(1)(a)—which, again, is the statute governing the appointment of counsel in a postconviction case—the term "summarily dismissed" refers to the frivolity review that a district court is required to undertake pursuant to rule 65C. We do too. As noted, rule 65C governs postconviction proceedings, and that rule includes a subsection entitled "Summary Dismissal of Claims," which then sets forth the process for the initial frivolity review. Utah R. Civ. P. 65C(h)(1). Thus, for purposes of the section 78B-9-109(1)(a) appointment of counsel

decision, we agree that a petitioner is eligible for the appointment of postconviction counsel after a district court conducts the initial review and concludes that the petitioner has presented non-frivolous claims.

¶50   But even so, Peterson has not persuaded us that the district court somehow thought that he was ineligible to receive counsel here. After all, when the court issued the ruling in which it denied Peterson's request for the appointment of postconviction counsel, the court never said that it thought he was ineligible. To the contrary, the court cited the correct statute, recited a couple of the factors, analyzed those factors, and then denied the request based on its analysis of those factors. By doing so, the court expressly contemplated that Peterson was eligible for the appointment of postconviction counsel, but the court simply concluded that the appointment of counsel was not warranted under the circumstances of this case. If the court had believed Peterson was ineligible to receive counsel at all, it would have had no reason to address these factors.

¶51   The court's subsequent statement that "counsel was not appointed at the trial court level as the petition was summarily dismissed" does not persuade us that the court had previously been confused about this. And here, we think the alleged disconnect is explainable by the fact that the phrase at issue—"summarily dismissed"—can have different meanings depending on the context. The word "summarily" is the adverb-form of the word "summary," and it can refer to proceedings that are "quickly executed," as well as those that relate to a "summary proceeding."[6] When used in these fashions, courts and litigants alike sometimes colloquially say that a court "summarily" rejected a claim if the court did so quickly or without proceeding all the way to trial.

---

6. *Summary*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/summarily [https://perma.cc/2Y56-EM2 D].

¶52    Our decision in *Perea v. State*, is illustrative. 2018 UT App 229, 438 P.3d 77. There, after a petitioner filed a postconviction factual innocence petition, the district court granted the State's request for summary judgment. *Id.* ¶ 6. When the petitioner appealed, we described his argument as being that the district court erred in "summarily dismissing his factual innocence petition without holding an evidentiary hearing." *Id.* ¶ 7. In this sense, we used the phrase "summarily dismiss[ed]" to refer to a summary judgment ruling, and there are other cases in which our court did the same thing. *See, e.g.*, *Walker v. Zeus Land Holdings LLC*, 2021 UT App 9, ¶ 9, 482 P.3d 268; *Barnes v. Clarkson*, 2008 UT App 44, ¶ 17 n.7, 178 P.3d 930. In addition, there are other appellate decisions in which our courts have used some form of the phrase "summarily dismissed" to refer to decisions that were made without taking evidence. *See, e.g.*, *Ward v. McGarry*, 2021 UT App 51, ¶ 6, 491 P.3d 970 ("Ward asserts that the district court erred in approving the commissioner's recommendation and summarily denying her objection without adequate findings and without a trial or other evidentiary hearing."); *Red Bridge Cap. LLC v. Dos Lagos LLC*, 2016 UT App 162, ¶ 10, 381 P.3d 1147 ("Defendants contend that the district court erred . . . in summarily denying their motion for satisfaction without taking evidence or articulating grounds for the denial."); *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 n.2 (Utah Ct. App. 1993) (noting that "[s]ettlement agreements may be summarily enforced without an evidentiary hearing").

¶53    Here, when the district court noted, in its decision to appoint postconviction appellate counsel, that it had not appointed postconviction trial counsel because it had "summarily dismissed" the petition, we think the context indicates that the court was using the phrase "summarily dismissed" in this other sense—i.e., the court was noting that it had dismissed the petition on legal grounds without holding an evidentiary hearing, as opposed to the very particular sense in which that same phrase is used in Utah Code section 78B-9-109(1)(a). But regardless, in light of the fact that the earlier ruling had assessed Peterson's request for postconviction counsel on its own substantive terms, we see

no basis for using this offhand comment to reverse engineer the prior ruling and now add confusion into that ruling that didn't previously exist. We therefore reject this argument.

B.       Abuse of Discretion

¶54    Separate from the eligibility question, Peterson argues that the district court abused its discretion by denying his request for postconviction counsel. We disagree.

¶55    As noted, the court denied Peterson's request for the appointment of postconviction counsel, explaining that it was "satisfied" that "an evidentiary hearing [would] not be required," "the issues presented in the petition are not complex," and Peterson "appear[ed] to be fully capable of presenting his claims in a clear and articulate manner." This was based on two of the factors provided in Utah Code section 78B-9-109(2), which do indeed suggest that a court may look to whether an evidentiary hearing was required and the complexity of the issues.

¶56    It is a "well-settled principle that there is no constitutionally or statutorily guaranteed right to counsel when defendants elect to pursue collateral attacks on their convictions." *Zaragoza v. State*, 2017 UT App 215, ¶ 17 n.4, 407 P.3d 1122 (quotation simplified); *see also Carrell v. State*, 2023 UT App 93, ¶ 28, 536 P.3d 653 ("Neither the right to state-paid counsel nor the right to effective assistance of counsel is constitutionally or statutorily guaranteed in postconviction proceedings." (quotation simplified)), *cert. denied*, 540 P.3d 81 (Utah 2023). "Under the express terms of the governing statute, a district court enjoys wide latitude regarding whether to appoint counsel in a post-conviction case." *Zaragoza*, 2017 UT App 215, ¶ 17 (noting both the permissive use of the word "may" in the statute and the factor-based approach). "In this context, our supreme court has instructed that a postconviction court abuses its discretion only if its decision was beyond the limits of reasonability, an event which occurs when the court has taken actions that are inherently unfair

or that no reasonable person would take." *Carrell*, 2023 UT App 93, ¶ 35 (quotation simplified).[7]

¶57 In *Carrell*, we recently considered a similar challenge to a district court's decision to deny two requests for the appointment of postconviction counsel. *See id.* ¶ 38. There, the district court had denied Carrell's requests for counsel based on the low likelihood of an evidentiary hearing and its conclusion that the issues were not complex. *See id.* ¶¶ 39–41. Carrell challenged those denials on appeal, arguing that ineffective assistance of counsel claims are inherently complex, the PCRA is replete with "statutory rules and procedural minefields," and "the State is typically represented in such cases by attorneys who are well versed in the law in general and the PCRA in particular." *Id.* ¶ 42 (quotation simplified).

¶58 While acknowledging these concerns, we nevertheless affirmed. We explained:

---

7. In *Carrell v. State*, this court reviewed the 2020 version of this statute. *See* 2023 UT App 93, ¶ 28, 536 P.3d 653, *cert. denied*, 540 P.3d 81 (Utah 2023). And in *Zaragoza v. State*, this court referenced the 2012 version. *See* 2017 UT App 215, ¶ 17, 407 P.3d 1122. Before 2021, the statute included only two factors that a court could consider in deciding to appoint counsel: "whether the petition or the appeal contains factual allegations that will require an evidentiary hearing" and "whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." Utah Code § 78B-9-109(2) (2020). In 2021, the statute was amended to list five factors, including a catch-all provision that allows the district court to consider "any other factor relevant to the particular case." *Id.* § 78B-9-109(2)(a)–(e) (2021). As with the prior versions, the statute introduces the list of factors with the permissive "may"—i.e., it states that a district court "may consider" the listed factors. As a result, the recent additions reinforce the discretionary nature of this decision.

The things that Carrell is pointing to—the legal complexity of an ineffective assistance claim, the procedural hurdles posed by the PCRA, [and] the litigation advantages enjoyed by the State . . . —all exist in virtually every postconviction case. Yet if the legislature believed that the collective complexity caused by these things means that a postconviction petitioner must be provided with counsel . . . , the legislature would have written a statute under which the appointment of counsel is at some point mandatory. But the legislature didn't. . . .

This isn't to say that a postconviction court can't choose to appoint counsel anyway. Since a court has discretion to deny a request for counsel, it of course also has discretion to grant one, and we express no view here as to whether a postconviction court should (or should not) ordinarily grant such a request. But since the legislature has seen fit to place this decision in the hands of the postconviction courts, the question before us is simply whether this court abused its discretion in this case.

*Id.* ¶¶ 43–44.

¶59 Peterson's arguments are similar to those that were raised by Carrell in his appeal. Like Carrell, Peterson argues that PCRA petitions are inherently complex, he laments his lack of familiarity with legal rules, and he points out that as an incarcerated inmate, he's impaired in his ability to access information and other resources. But, as in *Carrell*, we again note that these perceived imbalances are likely present in most (if not virtually all) postconviction cases, and yet the legislature has still left this decision to the discretion of district courts. To the extent that Peterson's arguments are based on systemic concerns, we thus perceive no abuse of the court's discretion.

¶60 Cognizant of this, and with the benefit of appointed appellate postconviction counsel, Peterson offers two additional case-specific reasons why, in his view, the district court should have granted his request for postconviction counsel.

¶61 First, Peterson points out that in the State's reply to its motion for summary judgment, it referred to his pro se opposition memorandum as having consisted of "largely incomprehensible or otherwise unreadable marginalia and editorial remarks." In Peterson's view, this constituted an admission by the State that he was not capable of representing himself, and from this, Peterson argues that the district court abused its discretion by not appointing postconviction counsel.

¶62 When the State referred to Peterson's "marginalia and editorial remarks," this was an apparent reference to the fact that, in his opposition, Peterson had added handwritten responses and commentary in the margins of various attached documents. With this comment, the State was clearly meaning to deride the quality of Peterson's response. But we nevertheless don't agree that the district court was required to conclude that Peterson was incapable of representing his own interests. Peterson's opposition to the State's summary judgment was nine full pages, it was responsive in various points to the State's arguments, and it was supported by reference to various laws and portions of the record. In light of the "wide latitude" the district court has in deciding whether to appoint counsel, *Zaragoza*, 2017 UT App 215, ¶ 17, we disagree with Peterson's assertion on appeal that the district court was required to appoint him counsel on this basis.

¶63 Second, Peterson suggests that there is an irreconcilable disconnect between the district court's decisions to deny his request to appoint postconviction counsel but then grant his request for the appointment of postconviction appellate counsel. But Peterson has provided no authority (and we are aware of none) that requires these decisions to be made in lockstep. And indeed, Peterson's postconviction appellate counsel conceded at oral argument that he was not advocating for such a rule. While

we have no need to set forth the full parameters by which a court could view the two decisions differently, we note that there are indeed some differences between district court and appellate court proceedings. Certain rules apply on appeal that do not apply at the district court level (preservation, for example, as well as certain rules relating to the formation and use of the record). And the mechanics of briefing in general and argument in particular are different too. *Compare* Utah R. Civ. P. 7, *with* Utah R. App. P. 24. Without something more, Peterson has not persuaded us that the district court's decision to deny his request for postconviction counsel was fundamentally inconsistent with its decision to later appoint postconviction appellate counsel, much less that a ruling from us linking the two decisions would actually work to his benefit.

¶64 In sum, we conclude that when the district court denied Peterson's request for the appointment of postconviction counsel, it did so based on an assessment of the discretionary factors set forth in the PCRA. Peterson has not persuaded us that the court's resultant decision was "inherently unfair" or one "that no reasonable person would take." *Carrell*, 2023 UT App 93, ¶ 35 (quotation simplified). We therefore affirm this decision.

CONCLUSION

¶65 For the reasons set forth above, we reverse the district court's denial of Peterson's rule 60(b) motion, but we reject Peterson's challenge to the district court's denial of his request for appointed postconviction counsel. We remand for further proceedings consistent with this opinion.

_____